May it please the Court, Counsel, John Higgins worked at Union Pacific Railroad for 39 years as a locomotive engineer. For more than 20 of those years, he worked his job with the accommodation that he seeks in this case. He worked it with the accommodation for more than 20 years. That shows that there is, at the very least, a fact question about whether he could perform the essential functions of his job with an accommodation. That is the distinguishing characteristic between this case and all of the cases that defendant relied on. Now, there are more distinguishing characteristics, but that's the primary one. That's what distinguishes it from GlaxoSmithKline. That's what distinguishes it from Pickens. In none of those cases did the incumbent in the job, the plaintiff, perform the job with the accommodation that they wanted already for more than two decades. It's a stunning fact, and it's a fact that the district court did not wrestle with at all in its decision. So the accommodation is just not come to work, be excused from arriving at the workplace and being on duty? Yes. So, Your Honor, this case is not... Would you say that's the accommodation here? No. It is not what I would say, Your Honor, and here's why. What is it then? It is to lay off, as necessary, when his back is causing the extreme pain that it has. It's not about bad faith, which is why I said no to your question, Judge. I don't think the question wasn't bad faith, was it? The question was not coming to work is the accommodation. Well I think there was... Is that what you mean by lay off? Yes. That's the railroad speak for lay off. Lay off means not coming to work. Lay off means taking the day off of work when necessary. Pickens is a case that's sort of the primary case that forms the backdrop for the GlaxoSmithKline case and several of the cases that come after it. And in that case, what fundamentally drives the court, I think, is bad faith. That plaintiff had already sued the railroad and won in a previous case, and then he got disability benefits in which he averred under oath that he was unable to perform his job. Then he had his doctor falsify the records showing that he was... His doctor said he couldn't work. He had his doctor falsify the records to try to make it look like he could work. And then he sues and somehow he wins. And this court, frankly, I think was offended by that, and I can understand that. But this case is totally different, and that's why I said no to your question, Judge Shepard, because it's not about whether or not he felt like laying off. It's that he felt pain. And there's no allegation of bad faith in this case. What there is is a 39-year employee who drove a good train, who received this accommodation for more than 20 years. And the ADA is intended to provide greater employment opportunities, obviously, for people with disabilities. And that, as the US Supreme Court recognized in the Barnett case, sometimes requires preferences. By its very nature, an accommodation is a preference. It's treating somebody differently than the rest of the employees. What about the 24 hours between shifts? That's a good question, Your Honor. There is a document in the record, I think it's important to this case, it's at the Joint Appendix at 564. And in that letter, there is a request from 1993 that Mr. Higgins be allowed to lay off with at least 24 hours between shifts. And it says, on occasion. And that's exactly what he wanted when his new doctor, Dr. Higgins, asked him to continue to receive 24 hours off on occasion. Well, but that's what the case is about, isn't it? That letter didn't say on occasion. On its face, it said 24 hours between shifts. That was sent to him. And he didn't dispute that it was 24 hours between shifts. He didn't raise the occasional issue. And so isn't the issue for us whether the company was required to read occasionally into that letter? No, Your Honor, that is not the question for you. The question for you is whether the court should read the word continue in the letter. The letter says to continue to provide him that accommodation, 24 hours between shifts. And Mr. Higgins, when he received confirmation of that accommodation, didn't respond to it in writing because it looked exactly like the accommodation that he had received for more than 20 years. But what he did do is he talked. But I thought they then wrote to him and said that it's not the same, essentially. No. What they wrote to him is something that was not clear. And it said, it gave him a list of the accommodations that, or the restrictions as they called him, that he called it, that he needed. And by virtue of the fact that it looked exactly like what he had received from 1993 from that letter that I had you, that I directed the court to, he didn't see anything different about it. And what was also in the letter to Mr. Higgins was a communication from Union Pacific, the more recent letter, was a communication from Union Pacific that said, we can't accommodate these. That was the end of the conversation in terms of that job. So what Mr. Higgins did do is, in a manner that is totally consistent with, frankly, somebody who doesn't have a college education, who was a longtime laboring employee, was he talked to the nurse, Rhonda Ross, who talked to him about this. And he did protest when he spoke to her. There are portions of the record that we highlight, and there are portions of the record with respect to the transcript of that called the defendant highlights. Portions that we highlight say that he's emphasizing that continuation language. He wanted the continuation of the exact same accommodation that he had received for more than 20 years. There's a regulation that's very important in this case. It's 29 CF4 1630N3. That is a regulation that a fact finder is supposed to use to determine whether something constitutes an essential job function. And the court didn't look at that regulation. And that regulation requires an analysis of factors including the incumbent's experience in the job. I think, frankly, the regulation is intended to cause a fact finder to look at the incumbents like other employees in the job. Because it doesn't even contemplate a situation where somebody for two decades already received the accommodation that they seek. That's why there's a fact question. I'm not asking the court to determine as a matter of law that Mr. Higgins was entitled to this accommodation. I'm just asking the court to recognize that a reasonable jury could say, geez, there's something significant about the fact that he did this for two decades. And we ought to allow the jury to determine whether, in fact, he had been performing the essential functions of his job with an accommodation for all of that time. Can you enlighten me about what is the status of this purported agreement that is referenced in some of the correspondence from the railroad and it's referenced in the briefs, but apparently nobody has a copy of it? That's right. Your Honor, there was a settlement of a FILA claim that gave rise to an agreement that, yes, nobody has a copy of it, and law firms keep their records for seven years. This is 20 years later. But there is written records in the joint appendix and in the record where there is a discussion in letters between the parties about the agreement. And so there was an agreement. The agreement allowed Mr. Higgins the accommodations that he essentially continues to want in this case to lay off more than 24 hours when necessary, or when on occasion, is the language, on occasion, and to lay off on occasion. And that was the accommodation that was agreed to in that settlement and continued to be a fact that went forward in the case. And what's interesting about it, Your Honor, is that defendant, excuse me, a PLE, in their response to the EEOC, admitted that they were providing that accommodation to Mr. Higgins as an ADA accommodation. So they were providing him the accommodation that he wanted, and the court just did not wrestle with that fact. That's the key piece of the error at the district court. Well, would there be, would there be a, separate and apart from any ADA claim, would there be just a common law claim available with respect to that alleged agreement? And also, which would bring, perhaps, bring into play issues like your client's reliance on that agreement, the terms of the agreement, even though no one can produce it? Would that be a better approach than couching this in terms of an ADA issue? The issue that the court has before it is obviously an ADA issue. There are problems with the potential common law claim as well, including the potential statute of frauds issue, and other considerations that are just beyond the scope of what is at issue here. But under the applicable law, and under the purposes of the ADA, there is a fact question here, and this court should remand this case to, back to the district court for trial. Thank you. This document that you wanted us to look at, you said page 564 of the appendix? I did. Now, this appendix you've supplied has the page numbers cut off at the bottom, so it's hard to find the pages. But I think what you're referring to is this letter from Geoffrey Britton, M.D. Is that correct? Your Honor, I want to be mindful of my rebuttal time. May I approach and provide the copy? You just wasted 10 seconds. Oh, you want to approach the bench? I wouldn't give you a copy of it that I have. No, I'm just asking, are you referring to the Geoffrey Britton letter from March 12, 1992, when you say page 564? Your Honor, with your permission, I'd like to look at my notes and confirm that on my rebuttal. Or right now. That'd be better. Yeah, that'd be better. Yes. You are? Yes. Okay, that letter doesn't have the word occasionally in it. That's exactly my point, Your Honor. That's the letter from 1993, and it's the same thing that he wanted, the same thing that the letter said arguably more recently. There was always a hope that he would get 24 hours off. But he knew in practice he couldn't get it when he was at the other end of the line, so to speak. He drove from North Platte to Council Bluffs. When he was in Council Bluffs, he just knew he wasn't going to get 24 hours off, and he never did for more than 20 years. And that was the accommodation that was requested then, that was the accommodation that was requested now, and everybody knew that by occasionally, he meant he was going to get that time off, not when he was at the other end of the line. Where does the word occasionally come from? It's not in the letter. It's not in that letter, but it's in a couple of different letters in the record. And I'd like to reserve my last two minutes for rebuttal, if that's okay, Your Honor. All right, well, I thought you might want to answer the questions that... I do want to answer the questions. ... were concerning the court, but if you want to save for rebuttal, we'll hear from your colleague. Thank you. Mr. Moore, we'll hear from you. Counsel, Your Honors, may it please the court, my name is Scott Moore, and I represent the Appali, the Union Pacific Railroad Company. Mr. Higgins is asking this court to hold that indefinite and unpredictable leave that results in him missing one out of every four of his scheduled shifts is a reasonable accommodation under the ADA. It is not. This court has long held that regular and reliable attendance is an essential function of the job, and if an employee is unable to show up for work, he or she is unable to perform any functions, let alone the essential functions of the job. Therefore, requests for indefinite, unpredictable leave of absences are unreasonable as a matter of law. Your opponent's going to say, but you did it for 20 years, so why all of a sudden is something that you could do for 20 years and presumably reasonable now unreasonable? Two responses to that, Your Honor. Number one is this court has long held that even absences with the employee's permission do not establish that regular and reliable attendance is not an essential function. This court has long held that they're not going to punish an employer for over-accommodating an employee in establishing whether it's an essential function. But more importantly, something that was not mentioned by opposing counsel is in 2013, Union Pacific's demands changed. It's undisputed in the record that volume increased, and when volume increased, regular and reliable attendance became more important. And Union Pacific stressed that from the management level to the managers of Mr. Higgins, that all locomotive engineers were going to be held more accountable to their attendance. It is undisputed in the record that Mr. Higgins was on the E list, that is, the employees with the most absences. Mr. Higgins, along with other employees in that category, were warned and required to improve their attendance because Union Pacific needed more reliable attendance at that point. What the plaintiff here is arguing, the appellant is arguing, is an employer is always handcuffed. If they want to be more efficient, if they have more demands, if they have an increased need for attendance, well, you cannot change that. I know your business needs change, but you can't change what you've done in the past. That's unacceptable, and this court has made that clear. In fact, this court has been very clear that the employer's deference is very important. Giving the employer deference to their judgment is very important. That this court will not substitute its judgment for that of the employer. In fact, in Khalil versus Alliant Energy Corporate Services, Judge Colton, you said so long as the employer was not discriminatory, it is not the province of the court to determine what is the most productive or efficient shift for a facility. And there's certainly no evidence that Union Pacific's actions here were discriminatory because it held all locomotive engineers accountable. Beginning in 2013, in fact, plaintiff makes much ado about the fact that Michael Humphreys was monetarily compensated for improving everyone's attendance in the unit. That shows it's an essential function. She needed to improve attendance because she was getting that pressure because Union Pacific needed to move trains. And for that reason, the fact that he was getting the accommodation before does not establish that regular and reliable attendance is not an essential function. Now, both Mr. Higgins' disparate treatment and reasonable accommodation claims rise and fall on whether he's qualified to perform the job. In granting summary judgment, the district court held that regular and reliable attendance was an essential function of this locomotive engineer position. And Mr. Higgins' request for unpredictable and indefinite leave, which resulted in, and again, him missing 25% of the shifts he was scheduled for, was unreasonable. Mr. Higgins argues that regular and reliable attendance is not an essential function. And we talked about the fact that just because he was getting that leave in the past does not preclude it from being an essential function. But I want to confirm that even in this term, in lip versus cargo meet solution, this court has consistently held that a full time position, for a full time position, regular and reliable attendance is an essential function. And the locomotive engineer position is no different. The locomotive engineer, for all practical purposes, drives the train. If a locomotive engineer is not on the train, the train doesn't move. If the train doesn't move, Union Pacific cannot transport the goods from location A to location B. In other words, if the train doesn't move, Union Pacific can't even conduct its business. And more importantly, if Mr. Higgins doesn't show up for the job, someone else has to. This is not a job that can be done outside of the hours that someone's scheduled. Union Pacific is not saying that in certain circumstances, leave cannot be a reasonable accommodation. But for a job where someone has to be there, there has to be someone in that seat driving the train. It is an essential function. The plaintiff's counsel indicated, Ms. Higgins' counsel indicated that what motivated this court in its past decisions in holding that regular and reliable attendance was an essential function was bad faith. I don't think that's the case. What motivated this case and what this court has articulated behind that reasoning is, if you have a job where someone has to show up, if they don't show up for the job, they can't perform any of the functions of the job, let alone the essential functions. That's what drives this court. Leave that will allow an employee to meet the essential functions is a reasonable accommodation. An accommodation is something that allows the employee who has the disability to improve their health to be able to perform the essential functions of the job. It is not a permanent missing the job over and over again. So if an action based on the ADA is not an appropriate remedy here, what is the appellate's remedy here where he and the railroad have operated under this agreement for over 20 years? Aren't there some fact issues that need to be adjudicated on that? It just seems, something seems to be amiss, perhaps, where there's been reliance on this agreement and now it's abruptly terminated. Judge Shepard, I think as you mentioned earlier, maybe there is a contract claim. Maybe there is a claim based upon that personal injury settlement that Mr. Higgins should have proceeded with, but he didn't. Here he proceeded with an ADA claim. And I think it's very important to distinguish here. He cannot turn his contract claim into an ADA claim. Those two are separate and independent. And Unit Pacific's obligation under the ADA is certainly different than any other agreement into which they entered. Now we believe there's plenty of evidence in the record that said he has this leave, but under that agreement he had to provide a doctor's note and he still had to meet the minimum requirements of attendance. That may be a factual issue, but that factual issue is related to a contract claim that he did not bring. What about the accommodation that the company was allowing previously? Do you say that was going beyond what was required by the ADA? I'd say number one, yes, it was going beyond what was required under the ADA and indeed may have been part of that FILA settlement before. And obviously an employer can enter into an agreement to settle a claim and whatever risk they have on that claim if they so choose, and give more rights to an employee than another employee. So to the extent it was based upon that contract, certainly. To the extent it- How does that relate? Well, go ahead and finish with that. Sure, sure. But I think what's most important here, and what wasn't discussed before, is there was an increase in demand. It is undisputed in the record that there was an increase in demand for Union Pacific Services in 2013. So did that change the essential functions of the job? It certainly changed Union Pacific's approach to keeping employees accountable for attendance, Mr. Higgins and others. And- Did that change the essential functions of the job? We don't believe it did, your honor. This court has long held that even if an employer, with the employer's permission, an employee is allowed to lay off or miss more absences. That does not bind the employer to the concept of regular and reliable attendance is not an essential function of the job. This court has been very clear in case after case there. So we don't think that alone, even standing alone without the increased demand, changes that. But certainly with the increased demand- So you're saying our authorities say that if a company allows somebody to get by with doing work that is less than the essential functions, that doesn't affect the meaning of what is the essential function? It may in certain circumstances, your honor, but we need to look at all the factors, and- What were you referring to when you said we've said in case after case that- Sure. I thought that was your point, that just because they let him take what you're now saying is excessive leave. That didn't mean that more regular attendance was not an essential function. Sure. Your honor, I'll point the court to the GlaxoSmithKline case, 444, that was your honor's decision. In that case, over a two or three year period, an employee was taking 12 weeks plus 40 days, 12 weeks of FMLA leave plus 36 days, and the employer argued, look, my employers have been allowing me to take 12 weeks of FMLA leave, and then another month or two for the past two years. So they can't now claim that attendance is an essential function. And what this court said very clearly in that case is that we're not going to punish the employer for doing more than the ADA is required. Just because it's by the employee's permission doesn't mean they're bound by the ADA. And I think that's a very important precedent to set here. What the plaintiff counsel argued here is that in certain cases the ADA requires employers to give greater opportunities. That is simply incorrect. The ADA requires ensuring equal opportunity. And if because of the disability, they can't meet the equally applicable requirements, which was the case here, then they're allowed a reasonable accommodation. Not greater opportunities, but a reasonable accommodation, but they still have to be fundamentally qualified for the job. And here, whether it's this court's precedent with regard to the employer's permission for absences, or even more importantly here, the change in the business need for the employer that requires more strict monitoring of attendance, which is undisputed here. An employee's not qualified. Were this court to say, well, an employer's bound forever by what they do, even if they have change in business needs, even if it's undisputed that more car loads are out there and we need better attendance because we have more trains out there. I'm sorry, you agreed in the past, based upon different facts, to give leave, so you're bound by that. That, in this case, is the court substituting the judgment of it for the employer's business needs here. It was very clear that when the needs increased from the highest level of Union Pacific down through the management, management were told we need to keep people accountable. And Mr. Higgins was given notice of that, as well as the other employers. Now, let me ask you one other question, if I may. Does the case turn at all on this distinction between whether you needed occasionally to take 24 hours between shifts or needed regularly to take 24 hours between shifts? Is that important? Were the court to hold that his accommodation request that resulted in missing one of four shifts could be reasonable? There is the other reason. That is, his physician made very clear that he needed 24 hours rest between shifts. And that would result in, even by the employee's own admission, it would be unreasonable. You couldn't do it, because when he's in counts of bluffs, coming back, he can't have 24 hours off shift before he returns on that train. Now- Your primary argument was not based on that. Your primary argument was just the 25% is too much. That's correct. So even if he continues with occasional, if that means 25%, then he can't perform an essential function. That was your lead argument. That's correct. And that's the grounds on which the court granted summary judgment, the district court. But were the court to disagree with the district court, certainly that 24 hours between shifts is very important. This court is very clear that the employee must clarify if an accommodation or if there is a message that's going to the employer that's incorrect. The employer is allowed to rely on the treating physician's statement. They shouldn't be left to guess. And remember, even though they're talking about 1993 and those, we're talking about different managers back then. We're talking 20 years in the past. Union Pacific required, because of its increased attention on attendance, that he provide a doctor's certification. And this doctor said what he said, and there was no mention of occasion, excuse me, there was no mention of, it's not when you're away from home. It is, he needs 24 hours off between shifts. And Union Pacific should be able to rely on his treating physician's note. On this issue of attendance being required, what if you had a situation where you show statistically that the average employee lays off 15% of the time between vacation, sick leave, and so on. And the accommodation is, I only want to be able to take occasional time, and it's 15%. Can you come back in and say, well, attendance is a requirement, we can't accommodate 15%. And I know I'm out of time, Your Honor, may I answer the question? Please do. Yeah, no, in that case, then there would be evidence that it's discriminatory. We're treating the employee differently than other employees without disabilities who are allowed to take 15% of the time off. So that would show it's not an essential function. Again, going back to this court's opinion that if there's evidence of discrimination, that's different. But if there's no evidence of discrimination, it's applied equally and required of every employee, that's when it becomes unreasonable. And so that would be the distinguishing factor there, Your Honor. We ask that you upheld the district court's summary judgment grant, and I thank you, Your Honors. Very well, thank you for your argument. We'll hear a rebuttal. Your Honor, you asked the question, Judge Collinson, before I sat down. And the letter that discusses a continuation is two pages beyond the letter that we were talking about. It's a letter from Union Pacific that says the medical director's office supports the restriction that on occasion, John Higgins should not go out on an assignment more than every 24 hours. What page is that? It is JA 566. Your Honor, I'm very sorry about that page number thing. I didn't realize that was an issue. I'd be happy to provide another copy with page numbers to the court if that would be helpful. I would also, I'll plan to do that. With the court's permission. I'd like to also make the point that the cases that defendant relies on, about we're not going to punish the employer, first of all, all of those cases involve temporary accommodations. We're not going to punish the employer for temporarily providing accommodation. 20 years is not temporary. Here's the other thing. I'm not asking the court to punish anybody. I'm asking the court to allow the jury to consider this, as they properly should, because there are definitely fact questions here. The issue is not about punishment. The issue is about rule 56, and whether there are issues of disputed fact under the regulation that defines essential job functions. There's a very important case the court should look at. It's Philstead v Pizza Hut. In that case, it's an ADA case from this court. The court found it significant that the plaintiff was able to perform a particular job for more than 20 years. And that fact showed that she could perform the essential functions of the job. With that, I would respectfully request that the court reverse the grant of summary judgment in this case and allow the case to proceed to trial. Thank you. Thank you for your argument. The case is submitted, and the court will file an opinion in due course. Thank you to both counsel. Counsel are excused.